# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 2:08-cr-299 |
| v. | ) | |
| | ) | |
| ALLEN BROWN also known as | ) | |
| ALLAN BROWN, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER OF COURT

Pending before the Court is the GOVERNMENT'S MOTION TO RECONSIDER ORDER GRANTING SUPPRESSION ON THE BASIS OF NEWLY DISCOVERED EVIDENCE (Document number 74), the OPPOSITION BY ALLEN BROWN TO GOVERNMENT'S MOTION TO RECONSIDER ORDER GRANTING SUPPRESSION ON THE BASIS OF NEWLY DISCOVERED EVIDENCE (Doc. No. 76), and the government's reply to Defendant Brown's response in opposition (Doc. No. 77). The government's motion is ripe for disposition.

## PROCEDURAL HISTORY AND BACKGROUND

The facts of the underlying crime and criminal investigation thereof have previously been outlined by the parties before this Court and the U.S. Court of Appeals for the Third Circuit in *U.S. v. Brown*, Court of Appeals Docket # 09-3643, and are generally not in dispute. On October 1, 2007, two armed men robbed the S & T Bank in Ford City, Pennsylvania, at approximately 9:15 a.m. In the course of the robbery, the two men wore identical Halloween scream-type masks that covered their entire heads. They robbed the bank at gunpoint, and upon exiting the bank building, fled on foot and proceeded in the direction of the Armstrong County School

District Administration building. At the time, an unattended school district delivery van was parked outside the administration building, with its doors open and the keys in the ignition, as the driver was making a delivery inside the building. The van was presumably taken by the bank robbers and driven to an area approximately one half mile away, where it was apparently abandoned along Hobson Drive, near the intersection with Pennsylvania State Route 66 ("SR 66"). Hobson Drive is a two-lane road with no curbs or sidewalks. Approximately thirty (30) minutes later, the van was found at that location and processed by police. Upon search, the police recovered one of the two scream-type masks inside the van. The second mask was not found.

Shortly after the robbery, a criminal investigation was initiated by the Pennsylvania State Police ("PSP"). The investigation was led by Trooper First Class Shane W. Lash from the nearby Kittanning station. Special Agent Robert Smith of the Pittsburgh branch of the Federal Bureau of Investigation ("FBI") also responded to the robbery scene that morning. Special Agent Smith and Trooper Lash agreed that the PSP would assume the lead role in the investigation. Trooper Lash did, however, provide Special Agent Smith with updates regarding the status of the investigation. Doc. No. 75, Transcript of suppression hearing at p. 43.

As part of the investigation, PSP Troopers conducted numerous interviews of potential witnesses. Several witnesses stated that between 8:00 a.m. and 9:00 a.m. on the morning of the robbery, they observed an unoccupied car parked in the same spot where the stolen van was later found on Hobson Drive. *See, U.S. v. Brown*, 647 F.Supp.2d 503 (W.D.Pa. 2009). The witnesses' descriptions of the vehicle were generally consistent: two described it as a silver Volkswagen Jetta, one as a gray car, one as a silver car, and one as a white car with a blue stripe. *Id*. Each witness recalled seeing something hanging from the driver's side mirror, and two

2

witnesses described the car as having white license plates (one specifically identified the plates as Maryland plates.) One witness reported seeing a black male driving the same car away from the area at approximately 9:25 a.m., ten minutes after the robbery. Special Agent Smith did not participate in the interviews of the witnesses who provided this information. Doc. No. 75 at p. 87.

This interview information became known to Special Agent Smith through conversations with Trooper Lash, who also memorialized same in a PSP Incident Report. Special Agent Smith incorporated this information in a draft affidavit of probable cause for a search warrant on or about January 23, 2008. *Id.* at pp. 87-88. Special Agent Smith did not receive a copy of Trooper Lash's report until January 26, 2008, three days after drafting the affidavit. *Id.* at p. 90.

Defendant Brown moved to suppress the DNA evidence from the scream-type mask on the basis of purportedly false information in the affidavit of probable cause, particularly information contained in paragraph 7(c), which stated:

> Police interviews of various witnesses following the robbery reported witnessing the stolen Armstrong County School Administration van meet up with a silver Volkswagen Jetta having a possible Maryland registration. Witnesses then observed the silver Jetta drive away from the area where the van was left parked.

During the suppression hearing on July 31, 2009, Special Agent Smith testified regarding the statements in paragraph 7(c) as follows:

> Q. Now, during the course of the investigation, did you personally get involved in the interview of any of the witnesses who observed the Volkswagen Jetta?
>
> A. I did not.
>
> Q. Did you get involved in the interviews of anyone relative to the van being stolen?

A. I did not.

*See* Transcript of Suppression Hearing filed at Doc. No. 75 at 84-85. Special Agent Smith further testified in relevant part regarding any notes of his investigation:

Q. So the personal notes that you took, where are those now?

A. I have no idea. They weren't associated with any particular 302 or report that I would have been producing, so they could have been thrown away.

Q. You might have just written it down and thrown it away, but you don't know?

A. Yes.

Q. Would they be in the file?

A. Typically, when I would save notes is when they would be as a result of a particular interview, not necessarily with a trooper or another officer unless they had substantive information to provide.

Q. So you had no personal notes to refer to then when you prepared the affidavit, correct?

A. I may have taken notes of the occasion I spoke with Trooper Lash but after producing the affidavit and reviewing it and believing it to be true and correct, I most likely threw those notes away.

Q. Most likely or did?

A. I don't have them so I have to say I did.

*Id.* at pp. 101-02. Upon conclusion of the hearing, this Court found:

> Defendant challenges paragraph 7(c), correctly asserting that "the affidavit stated falsely that witnesses reported seeing a stolen Armstrong County School District van, which was the apparent getaway vehicle, 'meet up with a silver Volkswagen Jetta having a possible Maryland registration,' and that 'witnesses then observed the silver Jetta drive away from the area where the van was left parked.'" Doc. # 51 at p. 2. The government concedes that the first sentence of paragraph 7(c) is false. Doc. # 53. The Court agrees. From the testimony and evidence, no witnesses saw the subject vehicles stopped, parked, or present at the same place at the same time, and

4

no witnesses saw any person(s) moving from one of the vehicles to the other.

*Brown*, 647 F.Supp.2d at 511.

The government appealed the suppression of evidence, during the process of which it conceded that the warrant affidavit contained a materially false statement at paragraph 7(c). More particularly, the government acknowledged in its motion for reconsideration that "based on the information it had at the time [of the suppression hearing and the appeal process], the government informed both this Court and the Court of Appeals that no witness had ever reported seeing the Jetta 'meet up with' the van." Doc. No. 74 at ¶ 2. The government now seeks to re-open the suppression hearing. *See id*. Attached to the government's motion are various materials, specifically, email correspondence between law enforcement agents and prosecutors, a handwritten statement of purported witness Tom Klingensmith, and an unsigned, undated note, allegedly authored by Special Agent Smith. The government now contends that on January 24, 2011, days after the decision was issued by the Court of Appeals which affirmed the suppression of the evidence, witness Klingensmith approached the Pennsylvania State Police with information that he had seen the van and the Jetta together on Hobson Drive shortly after the bank robbery, and provided a written statement to that effect. *Id.* at ¶ 5. The written statement detailed that Klingensmith was interviewed by a law enforcement officer (not identified by name or by organization within the statement itself) on the day of the robbery and that he relayed his information about having seen the vehicles at that time. *Id*. at ¶ 9. Special Agent Smith was subsequently notified of witness Klingensmith's recent contact with the state police. According to the government, the following sequence ensued:

> As is typically the case, Agent Smith maintained two different types of case files

5

regarding the instant bank robbery investigation: (1) the official case file that included all official records and reports related to the investigation and (2) a drop file including telephone numbers and other personal notes and contact information. Although Agent Smith reviewed his official case file prior to the initial suppression hearing and had not seen any information relating to the van and the Jetta meeting up, he did not review his drop file prior to the hearing. However, after receiving Trooper Lash's call about Mr. Klingensmith's phone call to [PSP] Corporal Murphy [on January 24, 2011], Agent Smith searched his drop file. Agent Smith recovered his handwritten note indicating that he had talked with Mr. Klingensmith previously, and that Mr. Klingensmith had in fact stated that he had seen the van and the Jetta meet up as reported in the warrant affidavit - refreshing Agent's Smith recollection as to the basis for his inclusion of paragraph 7(c) in the warrant affidavit. This handwritten note had not been formalized into an official contact or an FBI Form 302 and was therefore not a part of Agent Smith's official case file.

*Id*. at ¶ 11. In light of these recent developments, the government asks the Court to conduct a hearing and allow the government to introduce "this newly discovered evidence" as a basis to reconsider its previous suppression of evidence. *Id.* at ¶ 12.

Defendant opposes the government's motion on a number of grounds. *See* Doc. No. 76. Defendant contends that the government's explanation is insufficient to justify re-opening the record on the suppression. *Id*. Defendant notes that this new evidence would require Special Agent Smith to recant certain portions of his own previously sworn testimony, particularly that he did not interview any witnesses relative to the van being stolen and that he no longer maintained any personal notes from the investigation. Defendant also objects to the notion that this evidence qualifies as "newly discovered", especially given the fact that the information, including Special Agent Smith's personal notes and his recollected memory of having interviewed witness Klingensmith, was not only held by the government since the day of the bank robbery itself, it was actually maintained by the very same government witness who testified at the suppression hearing that he no longer had any personal notes, and that he did not

interview any witnesses regarding the van. *Id.*

## ANALYSIS

While the government's motion seeks relief with use of the term of reconsideration, the content of the motion raises for consideration the question of whether it should be permitted to reopen its previous case in opposition to Defendant's motion to suppress for the purpose of introducing evidence in support of those portions of the affidavit of probable cause that were determined to have been false. Accordingly, the Court will consider the government's motion in two parts.

A.    Reconsideration based upon "newly discovered evidence"

The purpose of a motion for reconsideration "is to correct manifest errors of law or fact or to present newly discovered evidence." *Kabacinski v. Bostrom Seating, Inc.*, 98 F.Appx. 78, 81 (3d Cir.2004) (quoting *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir.1985)). The Court may grant a motion for reconsideration if the moving party shows: (1) an intervening change in the controlling law; (2) the availability of new evidence which was not available when the court issued its order; or (3) the need to correct a clear error of law or fact or to prevent a manifest injustice. *United States v. Banks*, 2008 WL 5429620, at * 1, Crim. Act. No. 03-245 (W.D.Pa. Dec. 31, 2008) (citing *Max's Seafood Café by Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir.1999)). The Court notes that "newly discovered evidence" is more commonly found as a potential basis for a criminal defendant's post-conviction motion for a new trial under Rule 33 of the Federal Rules of Criminal Procedure. In either case, the test to determine whether evidence is "newly discovered" is both objective and subjective: evidence is not "newly discovered" if it "was [actually] known or could have been known by the diligence of the defendant or his

7

counsel." *U.S. v. Cimera*, 459 F.3d 452, 461 (3d Cir. 2006)(quoting *United States v. Bujese*, 371 F.2d 120, 125 (3d Cir.1967)(internal quotations omitted)). In order to justify relief, "the evidence must be in fact, newly discovered, i.e., discovered since the trial" and "facts must be alleged from which the court may infer diligence on the part of the movant." *Id.* (quoting *U.S. v. Iannelli,* 528 F.2d 1290, 1292 (3d Cir. 1976)).

In this case, the government seeks to introduce the "newly discovered evidence" relating to the existence and statement of witness Klingensmith. The Court concludes that there is no objective basis to consider this evidence to be newly discovered. Evidence is not newly discovered if it was actually known or could have been known through the diligence of the party. The gravamen of the government's position is that the evidence was originally known prior to the formulation of the affidavit of probable cause in support of the warrant, then subsequently forgotten. The fact that this information has now purportedly reemerged within the awareness of Special Agent Smith does not make it newly discovered in the context of reconsideration. Further, the Court cannot consider this information to be newly discovered, as it cannot infer diligence on the part of the government given the apparent failure to review the drop file prior to the suppression hearing. As such, said evidence is not newly discovered. However, the reconsideration analysis does not end here.

B.  Reopening of the government's case

The decision to permit or deny the government the opportunity to reopen a suppression hearing is analogous to the question of whether the government may reopen its case after resting, and is within the discretion of the Court. *U.S. v. Coward*, 296 F.3d 176, 182-83 (3d Cir. 2002); *see also*, *U.S. v. Vastola*, 915 F.2d 865, 876 (3d Cir. 1990)(relying upon *U.S. v. Blankenship*, 775

8

F.2d 735 (6th Cir. 1985). Like many discretionary decisions made by courts, however, there is a methodology to consider in making such a decision. On one hand, the Court notes the seemingly broad language of the Court of Appeals for the Sixth Circuit in *Henry v. U.S.*, 204 F.2d 817, 820 (6th Cir. 1953):

> There is no iron-bound, copper-fastened, double-riveted rule against the admission of evidence after both parties have rested upon their proof and even after the jury has entered upon its deliberations. Considerable latitude in discretion is vested in the trial judge in this respect.

On the other hand, the Third Circuit has cautioned that "'courts should be extremely reluctant to grant reopenings.'" *Howard*, 296 F.3d at 182-83 (quoting *U.S. v. Kithcart,* 218 F.3d 213, 219 (3d Cir. 2000)("*Kithcart II*")(additional internal quotations omitted)).

A number of factors must be considered in determining whether a party should be permitted to reopen a suppression hearing. *Kithcart II*, 218 F.3d at 220 (citing *Blankenship*, 775 F.2d at 741). In essence, a two-tiered analysis has surfaced within the case law to guide a court's consideration. The government has an initial burden of presenting a satisfactory explanation for its failure to previously present the evidence which it now seeks to introduce. *See Vastola*, 915 F.2d at 871; *see also*, *Kithcart II*, 218 F.3d at 220 ("In order to properly exercise its discretion the district court must evaluate that explanation and determine if it is both reasonable and adequate to explain why the government initially failed to introduce evidence that may have been essential to meeting its burden of proof."); *cf. U.S. v. Thetford*, 676 F.2d 170, 182 (5th Cir. 1982), *cert. denied*, 459 U.S. 1148, 103 S.Ct. 790, 74 L.Ed.2d 996 (1983)("The party moving to reopen should provide a reasonable explanation for failure to present the evidence in its case-in-chief.") There is an objective component to the government's proffered explanation in order for it to be

9

considered satisfactory. *Vastola*, 915 F.Supp.2d at 871 (referencing *U.S. v. Rios*, 495 U.S. 257, 110 S.Ct. 1845, 1851, 109 L.Ed.2d 224 (1990)(remanding a case back to the district court for further factual inquiry given that the government's explanation was "objectively reasonable" and, hence, would suffice as a "satisfactory explanation").

In the event a court considers the explanation within the moving papers of the government to be satisfactory, it may exercise its discretion and permit the government to reopen its case. *See, e.g., Vastola*, 915 F.2d at 876. If its case is reopened, the government would have to prove to the court's satisfaction that the reason it did not previously introduce this evidence now being advanced was the actual reason why, as opposed to merely a "reasonable explanation" why, said evidence was not introduced. *Id*.; *cf. Rios*, 110 S.Ct. at 1851-52. More particularly, here the government would be required to introduce evidence that is, *inter alia*, relevant, admissible, and technically adequate in ascertaining whether the explanation now offered surmounts the government's own evidence from the original suppression hearing, and if so, whether it prevails over Defendant's basis for objection to the seizure of DNA evidence pursuant to the warrant.

The Court will exercise its discretion and permit the government to reopen its case on the motion to suppress. More specifically, the Court finds that the government has presented a satisfactory explanation for its failure to present the evidence at the suppression hearing. The government's proffered explanation, if proven to be true, may impact this Court's previous decision significantly. According to the government's explanation, on the day of the robbery itself, Special Agent Smith did speak with a witness, Mr. Klingensmith, who relayed information about having seen the Jetta parked along Hobson Drive that morning (October 1, 2007), and saw

the van drive up shortly after the robbery and parked nose to nose with the Jetta. Later he noticed that the Jetta was gone, but the van remained. Mr. Klingensmith later saw police officers around the van, and he spoke to one of them about what he saw. As such, the government contends that the information challenged by Defendant in paragraph 7(c) of the affidavit of probable cause was not false; that said information did exist and was known to Special Agent Smith at the time he prepared the affidavit. In this regard, the Court finds the potential substantive relevance of the government's proffered evidence to be a sufficient basis to permit the government to re-open its case, provided the explanation can justify to the Court's satisfaction why the evidence was not introduced previously.

Of course, the Court cannot overlook the lengthy process that this issue has followed to date. At the risk of gross understatement, the Court notes that the evidence at the heart of the explanation now provided by the government may have impacted the decision regarding Defendant's motion to suppress. If the evidence is now provable, and if the Court finds that the questionable information in the affidavit was not false, the absence of it at the suppression hearing will have effected a gross distortion of the record. The question becomes whether the government should be permitted to correct this distortion.

At the time of the Court's ruling on Defendant's motion, there was no evidence to justify the challenged content of the affidavit of probable cause. The government even conceded that no witness reported having seen the two vehicles 'meet up'. Neither Trooper Lash's report(s) nor his testimony contained any such information, and given the government's explanation now, Trooper Lash may well have not known anything about witness Klingensmith at the time of the hearing. Special Agent Smith also testified during the hearing. Unfortunately, either subject to

11

the deficiencies of his own memory or his choice not to review his own drop file prior to testifying, or both, Special Agent Smith did not provide any testimony or evidence about what was seen by Mr. Klingensmith on the morning of the robbery. Since Special Agent Smith was the person who purportedly interviewed Klingensmith, his inability to recall that interview effectively left a virtual dearth of evidence regarding the two vehicles being seen in juxtaposition along Hobson Drive by a witness within minutes of the robbery.

Crucial to the Court's decision here, however, is the point that such a subsequent failure of recall does not preclude the actual existence of the underlying evidence in the first place. According to the government's explanation, the evidence did exist, and it would have provided a basis in truth for the challenged statement in the affidavit of probable cause. There is a subtle but distinct difference between the notion that Special Agent Smith did receive the information from witness Klingensmith, included it in the affidavit of probable cause, only to be subsequently forgotten, and the notion that such information had never existed in the first place. Similarly, there is a difference between Special Agent Smith's failure to review his drop file in the course of preparing to testify at a suppression hearing and thereby failing to recall crucial information included in the affidavit, and the inclusion of information into the affidavit by Smith that was made with a reckless disregard for the truth. While the latter may be characterized as a negligent failure to prepare for a hearing on July 31, 2009, it is a far cry from a determination that Smith swore to false information in an affidavit on January 23, 2008. Just as the dissent noted in the Third Circuit opinion, negligence on the part of the officer does not constitute reckless disregard for the truth. *Brown*, 631 F.3d at 651 (Cowen, J. dissenting)(citing *Franks v. Delaware*, 438 U.S. 154, 171, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) ("[A]llegations of negligence or innocent

12

mistake are insufficient" to warrant suppression)). The Court is also mindful of the fact that awareness of this previously overlooked evidence did not originate with Special Agent Smith or any other government agent, but with Mr. Klingensmith himself. Not only does it appear that Mr. Klingensmith was the proverbial source of the refreshed recollection, but the timing of his contact with the State Police corresponds with the reporting in the news media of the Third Circuit's decision.

The Court has also given to consideration to the potential of prejudice to Defendant. When faced with a motion to reopen, a court's primary focus should include consideration of whether the party opposing reopening would be prejudiced if reopening is permitted. *Kithcart II*, 218, F.3d at 219-20 (citing *Blankenship*, 775 F.2d at 740). "One of the critical factors in evaluating prejudice is the timing of the motion to reopen." *Blankenship*, 775 F.2d at 740. Notwithstanding the passage of time that has already occurred, the Court does not consider the government's motion to be untimely. Inherent within the explanation of the government is a chronological sequence describing how information was overlooked, and more importantly, subsequently rediscovered. Upon the rediscovery of the information previously provided by Mr. Klingensmith, which did not occur until after the Third Circuit issued its decision, the government filed its motion now before the Court in a timely manner. Further, the Court notes that the case pending remains in the pre-trial phase, and that Defendant will have a full and fair opportunity to rebut the evidence offered by the government through cross examination and direct testimony/evidence. Taking these factors together, the Court does not find that reopening the suppression hearing will be unduly prejudicial to Defendant.

Here, the government has asked the Court to reconsider the question of whether the

content of paragraph 7(c) was either deliberately false or made with a reckless disregard for the truth, and has provided an explanation to justify the requested relief, both in terms of why it did not present the evidence previously, and why the evidence, if now considered, would be relevant to the suppression decision. The Court considers the explanation sufficient to afford the government the opportunity to prove the sufficiency of the affidavit.

## CONCLUSION

For the reasons hereinabove set forth, the Government's Motion to Reconsider Order Granting Suppression on the Basis of Newly Discovered Evidence, Doc. No. 74, will be granted. An appropriate Order follows.

McVerry, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 2:08-cr-299 |
| v. | ) | |
| | ) | |
| ALLEN BROWN also known as | ) | |
| ALLAN BROWN, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER OF COURT

AND NOW, to wit, this 8th day of April, 2011, in accordance with the foregoing memorandum opinion, it is hereby ORDERED, ADJUDGED, and DECREED that the GOVERNMENT'S MOTION TO RECONSIDER ORDER GRANTING SUPPRESSION ON THE BASIS OF NEWLY DISCOVERED EVIDENCE, Doc. No. 74, is **GRANTED**.

A supplemental hearing on Defendant's Motion To Suppress Evidence, Doc. No. 51, and the government's instant motion is scheduled on Wednesday, April 20, 2011, at 9:30 a.m. in Courtroom 6C, United States Courthouse, 700 Grant Street, Pittsburgh, PA 15219.

BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge

cc: Shaun E. Sweeney,
Assistant United States Attorney
Email: shaun.sweeney@usdoj.gov

Marketa Sims,
Assistant Federal Public Defender
Email: marketa_sims@fd.org